STATE OF MAINE
CUMBERLAND, ss.

SHAUN DONLIN,

Plaintiff

v.

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,

Defendant

SUPERIOR COURT
CIVIL ACTION
Docket Nos. AP-13-22
AP-13-23

TDW- CUM- 2/13/2014

ORDER

STATE OF MAINE
Cumberland, ss. Clerk's Office

FEB 13 2014

RECEIVED

Before the court are two consolidated appeals by Shaun Donlin from decisions of the Maine Unemployment Insurance Commission.

In his first appeal (AP-13-22) Donlin is appealing from a February 28, 2013 Commission decision upholding the denial of unemployment benefits for the period from November 27, 2011 through February 25, 2012. Admin. Record in AP-13-22 at 22-23. This Commission decision was affirmed on reconsideration on April 3, 2013. Admin. Record in AP-13-22 at 1-2.

In his second appeal (AP-13-23) Donlin is appealing from a second Commission decision, also issued on February 28, 2013, upholding the denial of unemployment benefits for the period from February 26, 2012 to June 23, 2012. Admin. Record in AP-13-23 at 22-23. That decision was also affirmed on reconsideration on April 3, 2013. Admin. Record in AP-13-23 at 1-2.[1]

---

[1] Because the issues on these appeals are related and most of the documents, including the transcript of a consolidated hearing before the hearing officer, are contained in both administrative records, the court will refer solely to the administrative record in AP-13-22. Citations to "R. ____" will refer to that record.

These appeals turn on the statutes and administrative rules relating to the timely filing of claims.

The background facts setting the stage for the issues now on appeal are as follows: Donlin initially filed for unemployment benefits in February 2011 and began collecting benefits at that time. R. 152. In May 2011 his employer recalled him to work but Donlin was unable to return to work at that time. Id. In August 2011 the Department of Labor determined initially that Donlin was disqualified from receiving benefits because he had refused an offer of work, which also resulted in the determination that Donlin was liable for an overpayment. R. 152-53.

Donlin appealed that decision and continued to file weekly claims for benefits while his appeal was pending. The initial decision was affirmed by a hearing officer in October 2011 and by the Commission on December 8, 2011, but Donlin then sought reconsideration of that decision. R. 153.

Although he continued to pursue his appeals, Donlin ceased filing weekly claims for unemployment benefits for weeks after November 26, 2011. R. 153. The last date on which Donlin filed a weekly claim form was December 5, 2011. R. 162-63.

In August 2012, the Commission acted on Donlin's request for reconsideration and found that Donlin had demonstrated compelling reasons for refusing the employer's recall to work in June 2011. The result of this decision was that Donlin was found entitled to benefits from June 2011 through November 26, 2011 – the last week for which he had filed weekly claims. In addition, Donlin was no longer liable for any overpayment. R. 117-20.

2

These two appeals concern Donlin's entitlement to benefits for the period after he ceased filing weekly claims – the period from November 27, 2011 to June 23, 2012.[2] The Commission's denial of benefits for those weeks is based on 26 M.R.S. § 1192(1) and the Bureau of Unemployment Compensation regulations governing the filing of weekly claims. 12-172 CMR, Chapter 3.

Title 26 M.R.S. § 1192(1) provides as follows:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if . . . [h]e has made a claim for benefits with respect to such week or part thereof in accordance with such regulations as the commission may prescribe.

See also 26 M.R.S. § 1194(1) ("Claims for benefits shall be made in accordance with such regulations as the Commission may prescribe").

The applicable regulations provide that claims for benefits must be filed weekly. Rules, Chapter 3(1)(D). Where claims are made by mail, they must be postmarked not later than 14 days from the end of the week for which a claim is made. Id. The regulations also provide for the filing of weekly claims "by telephone or other electronic means." In those instances the regulations provide:

> The filing of a weekly claim by electronic means shall be considered to be timely if it is completed by the close of the claim filing period on the second Friday following the week ending date for which the claim is filed.

Id.

In this case Donlin testified that he was making his weekly claims by telephone. R. 169. Under the portion of the regulations just quoted he would have had to make a telephonic claim for the week ending December 3, 2011 by December 17, 2011.

---

[2] The record reflects that Donlin eventually filed claim forms for those weeks but did not do so until December 2012.

3

Donlin testified that he had tried to file a weekly claim before December 17 but the automated phone system would not allow him to do so. R. 171-72. He further testified that after several further unsuccessful attempts he assumed that he was not being allowed to file claims because his eligibility for benefits had run out or because he had started part-time work and was considered ineligible for that reason. R. 171, 173.[3]

Based on testimony from the Bureau that the automated phone system would not allow an individual to file over the phone after 14 days had passed, R. 162, the hearing officer did not credit Donlin's testimony that he had attempted to file by phone within the two week period after December 3.[4] R. 139. The hearing officer also did not find credible Donlin's contention that he had not filed because he thought his part-time work made him ineligible. Id.

The regulations allow an extension of the filing deadline when good cause can be shown but only for seven days. Chapter 3(1)(D). Moreover, as the hearing officer found, none of Donlin's excuses met the definition of "good cause" contained in 12-172 CMR Chapter 1(1)(T), and the hearing officer specifically found that Donlin had not established a cause "of a necessitous and compelling nature" for his failure to continue weekly filings. R. 138-39.

---

[3] The statute allows a partially unemployed person to collect unemployment benefits equaling the standard benefit amount minus amounts earned. 26 M.R.S. §§ 1191(3), 1194(1-A). The regulations, however, require that claimants who are employed part time

> but not in such places or establishments or capacities in which they are customarily employed as full time workers, must register and maintain their eligibility for unemployment benefits in the same manner prescribed for totally unemployed persons.

12-172 CMR Chapter 3(H).

[4] There was also testimony that in cases where the automated phone system does not allow a claimant to file over the phone, the system would tell the claimant to call the Bureau. R. 165. There was no evidence that Donlin had ever done so.

4

On appeal from the hearing officer's decision to the Commission, Donlin modified his argument, contending that he should have been entitled to rely on a December 8, 2011 "notice of appeal rights" he had received when the Commission had, on the prior appeal, initially affirmed the decision that he was disqualified for refusing an offer to work in June 2011. R. 15. That notice informed him that if an appeal was filed, "you should continue to file claims each week you are unemployed." R.111. Because he had obtained part-time employment, Donlin argued, he thought he no longer was unemployed and did not have to file weekly claims.

Donlin had not testified before the hearing officer that he had relied on the December 8, 2011 notice of appeal rights. In fact, he had testified that he had not received any notices explaining the necessity of continuing to file weekly claims until a year later. R. 169-70. In any event, however, the Commission did not accept Donlin's arguments, concluding that applicants had ample notice of the requirement to file weekly claims and of the disallowance of benefits for any weeks where claims were not timely filed. R. 1-2.

On this appeal the court's role is to determine whether the Commission correctly applied the law and whether its findings are supported by any competent evidence. McPherson Timberlands Inc. v. Unemployment Insurance Commission, 1998 ME 177 ¶ 6, 714 A.2d 818, 820. The court cannot overrule a decision of the Commission unless the record before the Commission compels a contrary result. Id. The court also cannot substitute its own judgment for that of the agency and must affirm findings of fact if they are supported by substantial evidence in the record. Rangeley Crossroads Coalition v. Land Use Regulation Commission, 2008 ME 115 ¶ 10, 955 A.2d 223, 227.

Thus, even if the court would have assessed the evidence differently, it is the agency's role to determine credibility and to reconcile conflicts in the evidence. See

5

Sprague Electric Co. v. Maine Unemployment Insurance Commission, 544 A.2d 728, 732 (Me. 1988).

With respect to Donlin's claim for benefits for the period from November 27, 2011 to February 25, 2012 and his claim for February 26, 2012 to June 23, 2012, the court concludes that there is substantial evidence supporting the Commission's decision and that the Commission's decision must therefore be affirmed. As the Law Court stated in McKenzie v. Maine Employment Security Commission, 453 A.2d 505, 509 (1982):

> The claimant of unemployment compensation benefits must be held to have knowledge of the requirements of the Act and legally adopted regulations of the Commission and must suffer such loss as may have arisen from his failure to comply with the plain mandatory terms of the statutory program.

Before this court Donlin, citing 26 M.R.S. § 1194(10), argues that the wording in the notice of appeal rights could lead a person who obtained part-time work to conclude that he no longer needed to file weekly claims and that this constitutes an error allowing the Bureau to redetermine eligibility for one year after the original determination. However, section 1194(10) applies to errors in a determination of eligibility by the Bureau, not an alleged error in the wording of a notice or an error made by a claimant allegedly relying on a notice. Second, as noted above, Donlin did not testify at the hearing on January 31, 2013 that he had relied on the December 7, 2011 notice. Third, the applicable regulations expressly state that "[f]ailure on the claimant's part to file claim cards timely . . . does not constitute an administrative error." 12-172 CMR Chapter 3(D).

Donlin also cites 12-172 CMR Chapter 3(2)(B) for the proposition that he should be excused from filing weekly claim forms because, when he accepted part time work with the Cape Elizabeth School department, the School Department did not provide

6

him with claim forms. As far as the court can tell, he did not raise this argument before the agency. In any event, the provision in the regulations that he cites only applies to the obligations of an employer to "any individual customarily employed full time in its employ." Donlin was not customarily employed full time in the employ of the Cape Elizabeth School Department and therefore Chapter 3(2)(B) does not apply.[5]

The discussion above applies both to Donlin's claim for benefits from November 27, 2011 to February 25, 2012 and his claim for benefits from February 26, 2012 to June 23, 2012. However, there is one additional aspect that needs to be discussed as to the latter period. The unemployment compensation statute provides for the calculation of a "benefit year," a one-year period beginning on the date that a worker first files a request for determination of insured status. See 26 M.R.S. §§ 1043(5), 1191(2), 1191(4), 1192(5). Donlin first filed for benefits in February 2011. R. 152. His benefit year thus began at that time and expired a year later. As a result, the benefits he sought from November 27, 2011 to February 25, 2012 – the benefits at issue in AP-13-22 –involved Donlin's first benefits year.

The benefits he sought from February 26 onward, however – those at issue in AP-13-23 – would have been in a subsequent benefit year. With Donlin's eligibility having lapsed, the regulations provided that if an applicant seeks benefits in a subsequent benefit year, the applicant has to reapply. 12-172 CMR Chapter 3(J). The facts in the administrative record support the Commission's decision that Donlin's application for the period after February 25, 2012 was properly denied for the additional reason that he did not properly register for a new benefit year. R. 157.

---

[5] Donlin also moved without objection to amend his reply brief to cite certain newspaper reports relating to claims that the hearing officers had been pressured and observations that the unemployment appeals process is too complex. However, the court is required to base its ruling on the administrative record, not on newspaper articles. Moreover, those articles do not appear relevant to Donlin's case.

7

The entry shall be:

The decisions of the Commission in AP-13-22 and AP-13-23 are affirmed. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February 12, 2014

Thomas D. Warren
Justice, Superior Court

8

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101


SHAUN E DONLIN
1557 WESTBROOK STREET
PORTLAND, ME 04102

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101